IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAYSEAN M. HENDERSON,** | : CIVIL ACTION NO. 1:19-CV-1468 |
| Plaintiff | : |
| v. | : (Judge Conner) |
| **LAWRENCE P. MAHALLY,** *et al.*, | : |
| Defendants | : |

**MEMORANDUM**

In 2019, plaintiff Daysean M. Henderson filed suit under 42 U.S.C. § 1983, alleging constitutional and state-law torts during his incarceration at SCI Dallas. Following extensive litigation, including several rounds of Rule 56 motion practice, Henderson's claims have been narrowed to First Amendment retaliation and medical malpractice. With trial on the horizon, defendants have filed a spate of motions *in limine* regarding Henderson's remaining claims. We will grant in part and deny in part defendants' motions.

**I.    Factual Background & Procedural History**

A detailed factual history for this case was set forth in the court's November 24, 2021 memorandum opinion, (see Doc. 77 at 2-7), and need not be repeated here. In that summary judgment decision, we held that Henderson had failed to carry his burden to establish his Eighth Amendment claims of deliberate indifference to serious medical needs as to any defendant. (See id. at 8-13). Henderson did, however, proffer sufficient evidence of retaliation against defendants C.O. Scott

Owen and hearing examiner Charlie McKeown to survive those defendants' Rule 56 challenge to Henderson's First Amendment claim. (See id. at 13-15).

As to Henderson's medical malpractice claims, only one of the four malpractice defendants—Kirk Hughes Johnson, M.D.—moved for summary judgment at that time, and that motion was denied. (See id. at 16-19). We further corrected a prior erroneous grant of partial summary judgment regarding a portion of Henderson's medical malpractice claims; to wit: we vacated the previous partial grant of summary judgment as to "any and all . . . state law claims arising out of the failure to provide Henderson adequate medical treatment after the removal of the arch bars." (See id. at 16 n.6 (quoting Doc. 35 at 19)).

Thus, following our November 24 opinion, Henderson's medical malpractice claims against defendants Dr. Johnson, Lea Martin, Dr. Scott Prince, and Dipti Amin remain fully intact. That is, Henderson's claims of professional negligence may include the allegedly deficient care he received both before and after removal of the arch bars, as Henderson sees fit to pursue. (See Doc. 80 at 1 (denying defendants' motion to file a second motion for partial summary judgment as to only a portion of Henderson's medical malpractice claims)). We emphasize this holding because defendants Martin and Amin appear to misinterpret the scope of Henderson's malpractice claims, repeatedly asserting in their motions *in limine* that Henderson's claims concern "the alleged failure to provide adequate medical treatment *after the removal of the arch bars*." (See, e.g., Doc. 90 at 1-2; Doc. 92 at 1-2; Doc. 96 at 1-2 (emphasis added)). Henderson's malpractice claims are not limited in

2

this manner. Henderson, in fact, alleges improper medical care primarily *before* removal of the arch bars. (See Doc. 77 at 3-5).

In sum, defendants were granted summary judgment on Henderson's claims of Eighth Amendment deliberate indifference to medical needs. Henderson's First Amendment retaliation claims against Owen and McKeown and his medical malpractice claims against Martin, Amin, Dr. Johnson, and Dr. Prince either survived summary judgment or were not tested under Rule 56. The remaining defendants, except for Dr. Prince, now move *in limine* for various types of pretrial procedural and evidentiary relief. The motions are briefed and ripe for disposition.

## II.   Discussion

Defendants seek the following pretrial relief: (1) severance and separate trials on the retaliation and medical malpractice claims or, alternatively, bifurcation (Docs. 90, 101); (2) if Henderson testifies, use of his felony convictions for impeachment purposes under Federal Rule of Evidence 609 (Docs. 92, 104); (3) admission of other-act evidence under Federal Rule of Evidence 404(b) (Doc. 94); (4) preclusion of Henderson's ability to proffer expert testimony at trial (Docs. 96, 107); and (5) preclusion of Henderson's use of the doctrine of *res ipsa loquitur* at trial (Docs. 98, 110). We take defendants' motions in turn.

### A.   Severance or Bifurcation

All remaining defendants except Dr. Prince seek severance under Federal Rule of Civil Procedure 21. Defendants contend that the First Amendment retaliation claims should be tried independently from the medical malpractice claims. Dr. Johnson goes a step further, suggesting that—because the Eighth

3

Amendment medical indifference claims were resolved against Henderson at the Rule 56 stage—supplemental jurisdiction no longer exists and the medical malpractice claim against Dr. Johnson should be dismissed and refiled in state court.

Federal Rule of Civil Procedure 21 permits severance of claims. The rule states, in pertinent part, that on motion or *sua sponte*, "the court may at any time, on just terms . . . sever any claim against a party." FED. R. CIV. P. 21. Courts and litigants routinely conflate severance with bifurcation, which is governed by Federal Rule of Civil Procedure 42(b). See 9A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 2387 (3d ed. 2015). Unlike bifurcation of claims under Rule 42(b), severance under Rule 21 creates independent actions resulting in separate judgments. White v. ABCO Eng'g Corp., 199 F.3d 140, 145 n.6 (3d Cir. 1999); 9A WRIGHT ET AL., supra, § 2387.

Severance is appropriate when the claims are "discrete and separate," each capable of resolution without dependence or effect on the other. See Gaffney v. Riverboat Servs. of Ind., Inc., 451 F.3d 424, 442 (7th Cir. 2006) (citations omitted). The United States Court of Appeals for the Third Circuit has not established specific parameters for deciding a motion to sever claims. District courts often consider (1) whether the issues sought to be severed are significantly different from one another and would require distinct evidentiary proof; (2) whether severance would promote judicial economy; and (3) whether either party will be unduly prejudiced by severance or its absence. See Official Comm. of Unsecured Creditors v. Shapiro, 190 F.R.D. 352, 355 (E.D. Pa. 2000) (citation omitted). These same

4

considerations are frequently utilized when examining a motion to bifurcate claims under Rule 42(b). See, e.g., Griffith v. Allstate Ins. Co., 90 F. Supp. 3d 344, 346 (M.D. Pa. 2014); Goldstein v. Am. States Ins. Co., No. 18-CV-3163, 2018 WL 6198463, at *1-2 (E.D. Pa. Nov. 28, 2018) (citing Shapiro, 190 F.R.D. at 355).

The first factor favors severance. Henderson's retaliation claim is largely distinct from his medical malpractice claims. He alleges that Owen and McKeown instituted and prosecuted a false misconduct against him for filing a grievance regarding his deficient medical care. Although there is some minimal factual overlap, Henderson's First Amendment claim will require evidence of retaliatory conduct and animus by Owen and McKeown, while his malpractice claims will largely consist of evidence concerning the medical care (or lack thereof) he received from four other defendants.

Nevertheless, the remaining two factors militate strongly against severance. This case has been pending in federal court for over three years. The issues have been extensively litigated and winnowed, and trial is scheduled for next month. Severing this case into multiple cases—and sending one of them to proceed in state court—would certainly not promote judicial economy. This is especially true considering that Henderson is an incarcerated *pro se* plaintiff who will require significant logistical coordination with prison officials to be present for trial. And, contrary to defendants' contention that a trial of both claims would be "long" and "convoluted," (Doc. 91 at 8), we find that this case presents an uncomplicated set of claims that will be both relatively succinct and easy for jurors to compartmentalize.

5

We additionally find that defendants will not be unduly prejudiced in the absence of severance. We have little concern that jurors will "conflate Henderson's medical issues with the alleged retaliation," as defendants fear. (See id.) Henderson's claims are not difficult to understand or isolate. He alleges (1) he was provided deficient medical care, and (2) when he formally complained about this deficient care, two prison officials retaliated against him. We are confident that jurors will be able to distinguish these claims. If any party would suffer prejudice in relation to severance, it would be Henderson, as preparing for and meeting the requirements of even one civil trial (let alone two) while incarcerated is a daunting task for any *pro se* litigant.

Finally, as to Dr. Johnson's claim that this court lacks supplemental jurisdiction over the state-law malpractice claim against him due to resolution of the Eighth Amendment claims against Henderson, we disagree. A federal retaliation claim remains in this case that has at least some factual overlap with the medical malpractice claims. Even if there were no remaining federal claims, under 28 U.S.C. § 1367, the district court "*may* decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3) (emphasis added). Section 1367(c)(3) is permissive, not mandatory. It is generally true that if all federal claims are dismissed, the court should likewise dismiss the state-law claims. See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). However, before dismissing those claims, the court must consider "principles of 'judicial economy, convenience, and fairness to the litigants.'" Growth Horizons, Inc. v. Delaware County, 983 F.2d 1277,

6

1284 (3d Cir. 1993) (quoting Gibbs, 383 U.S. at 726). Here, those principles—as discussed above in relation to denying severance—favor exercising supplemental jurisdiction over the malpractice claims.

We will therefore deny defendants' motions to sever or bifurcate, as the circumstances in this case do not warrant such formal separation. Nonetheless, for the convenience of the parties and witnesses, the court is amenable to a logical organization of witnesses based on the two distinct claims. This matter can be discussed further at the pretrial conference.

### B. Rule 609 Impeachment

Defendants assert that if Henderson testifies, they intend to impeach him through use of his felony[1] convictions under Federal Rule of Evidence 609. Defendants point to 2010 convictions for robbery, terroristic threats, and simple assault; 2016 convictions for robbery of a motor vehicle, conspiracy, terroristic threats, and simple assault; and 2022 convictions for unauthorized use of a motor vehicle and simple assault.[2]

Under Federal Rule of Evidence 609, evidence of a witness's prior felony conviction "must be admitted, subject to Rule 403, in a civil case" to impeach a

---

[1] The descriptor "felony" is used herein to describe "a crime that, in the convicting jurisdiction, was punishable . . . by imprisonment for more than one year," regardless of whether state law classifies the offense as a felony or misdemeanor. See FED. R. EVID. 609(a)(1); see, e.g., Burgess v. United States, 553 U.S. 124, 126-27 (2008). None of the convictions at issue falls below a misdemeanor of the second degree under Pennsylvania law, so they all qualify as "felony" convictions for purposes of Rule 609(a)(1). See 18 PA. CONS. STAT. §§ 1103, 1104.

[2] Defendants concede that none of these convictions are *crimen falsi*, and thus Rule 609(a)(2) is inapplicable. (See Doc. 93 at 3).

7

testifying witness.  See FED. R. EVID. 609(a)(1)(A).  Admission of a prior felony "is premised on the common[-]sense proposition that one who has transgressed society's norms by committing a felony is less likely than most to be deterred from lying under oath."  Walden v. Ga.-Pac. Corp., 126 F.3d 506, 523 (3d Cir. 1997) (citation and internal quotation marks omitted).  Because admission of the conviction is subject to Rule 403 balancing, the court must consider "whether the probative value of a prior conviction is substantially outweighed by the prejudicial effect of admitting the conviction."  Sharif v. Picone, 740 F.3d 263, 272 (3d Cir. 2014) (citing FED. R. EVID. 403).

      The United States Court of Appeals for the Third Circuit has established four factors to be weighed against the potential for prejudice when making this determination: "(1) the nature of the conviction; (2) the time elapsed since the conviction; (3) the importance of the witness's testimony to the case; and (4) the importance of credibility to the claim at hand."  Id. (citation omitted).  Notably, convictions older than 10 years have a heightened admissibility standard where the balancing is reversed and the conviction is admissible only if its "probative value . . . substantially outweighs its prejudicial effect[.]"  FED. R. EVID. 609(b)(1).

See id. Henderson's 2022 convictions, on the other hand, are quite recent, making them more probative. Id. (citing United States v. Causey, 9 F.3d 1341, 1344 (7th Cir. 1993)). Lastly, Henderson's testimony and credibility are important to the case at hand. Henderson will be a critical witness regarding, among other things, his treatment, symptoms, communication attempts with prison officials, and establishment of retaliatory animus. His credibility on these issues will likely be crucial to his federal and state-law claims.

On balance, although the probative value of the 2016 and 2022 convictions is not great, we cannot say it is "substantially outweighed" by the potential prejudice to Henderson. Because Henderson's tort claims arose while he was incarcerated, the jury will already be aware that he has committed a criminal offense. None of the prior convictions present a danger of creating an inference of propensity, as they are distinct in character from the matters in this case. Moreover, none of the convictions are related to the factual issues in the instant case, a specific consideration emphasized by the Third Circuit. See Sharif, 740 F.3d at 273 (noting particular concern with admission of a prior conviction "where the nature of the conviction is . . . closely related to the issue at trial"). Therefore, should Henderson testify at trial, defendants may introduce his 2016 and 2022 felony convictions for impeachment purposes only, subject to an appropriate limiting instruction.

### C. Rule 404(b) Other-Act Evidence

Defendants McKeown and Owen move for the admission of other-act evidence related to Henderson's prison drug use. They seek admission of a February 21, 2018 positive urine test and resultant misconduct (separate from the

10

misconduct at issue in the instant retaliation claim); an alleged admission by Henderson on February 22, 2018 to smuggling drugs into the prison (leading to the at-issue misconduct issued on February 23, 2018); a July 19, 2018 positive urine test and resultant misconduct; and a March 25, 2021 incident at a different prison where mail addressed to Henderson containing synthetic cannabinoid was intercepted. (See Doc. 94 at 3).

Federal Rule of Evidence 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1). An exception to this rule provides that such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2). Rule 404(b) applies to criminal and civil cases alike. Ansell v. Green Acres Contracting Co., 347 F.3d 515, 520 (3d Cir. 2003) (citing FED. R. EVID. 404 advisory committee's note). "Rule 404(b) is a rule of general exclusion," precluding other-act evidence unless the proponent can show a proper purpose other than propensity. United States v. Repak, 852 F.3d 230, 240 (3d Cir. 2017) (quoting United States v. Caldwell, 760 F.3d 267, 276 (3d Cir. 2014)). Rule 404(b) carries "no presumption of admissibility," and thus the proponent of other-act evidence bears the burden of demonstrating its applicability. Caldwell, 760 F.3d at 276 (internal quotation marks and citation omitted).

Admission of other-act evidence under Rule 404(b) requires satisfaction of four distinct steps. Id. First, the proponent of the other-act evidence must identify

a proper, non-propensity purpose that is "at issue" in, or relevant to, the case at hand.  Id.  Second, after identifying a proper non-propensity purpose that is "at issue," the proponent must carefully articulate how the other-act evidence is relevant to proving that purpose without relying on propensity.  Id.  This step requires the proponent to set forth a "chain of inferences" that connects the other-act evidence to the proper purpose, "no link of which is a forbidden propensity inference."  Id. at 277 (quoting United States v. Davis, 726 F.3d 434, 442 (3d Cir. 2013)).  Third, the court must perform a Rule 403 balancing analysis to ensure that the probative value of the other-act evidence is not substantially outweighed by its "inherently prejudicial nature[.]"  Id. at 277 (citation omitted).  Finally, if requested, the court must provide a proper limiting instruction.  Id. (citations omitted).  This Rule 404(b) process demands "careful precision" from both the proponent of the other-act evidence and the trial judge determining its admissibility.  United States v. Brown, 765 F.3d 278, 291 (3d Cir. 2014) (citing Caldwell, 760 F.3d at 274).

McKeown and Owen contend that the proffered other-act evidence will show Henderson's "motive and intent behind making the statements upon which the allegedly retaliatory misconduct was based." (Doc. 95 at 7).  They further claim that the evidence will establish that Henderson "had both motive and intent to smuggle drugs into the prison to feed his addiction," and that his motive and intent are relevant to showing that the at-issue misconduct was offered for a "legitimate nonretaliatory purpose."  (Id.)  Additionally, defendants maintain that the February 21, 2018 incident will show that they had knowledge of Henderson's drug use such

12

that they would issue the at-issue misconduct on his admission alone without further investigation. (Id. at 8-9).

Assuming McKeown and Owen have identified a proper, nonpropensity purpose for the other-act evidence (*i.e.*, "motive and intent"), they have not established how the other-act evidence is relevant to proving Henderson's motive and intent without relying on propensity.[4] In fact, defendants do not address this critical second step at all. Put differently, they have not provided a "chain of inferences" such that the jury could infer from the other-act evidence that Henderson had the "motive and intent" to smuggle drugs (or admit to smuggling drugs). See Caldwell, 760 F.3d at 277 ("To be sure, the proffered evidence must be excluded if the proponent neglects or is unable to articulate this chain of inferences, and failure to exclude such evidence constitutes reversible error."); United States v. Heisey, No. 1:20-CR-159, 2021 WL 662289, at *5 (M.D. Pa. Feb. 19, 2021) (Conner, J.) (same). Accordingly, we are constrained to deny admission of the February 21, 2018 positive urine test and resultant misconduct; the July 19, 2018 positive urine test and resultant misconduct; and the March 25, 2021 incident at the outside jail.

Henderson's purported February 22, 2018 admission to smuggling drugs, on the other hand, is "intrinsic evidence"—and thus not subject to Rule 404(b)—because it goes to proving the charged misconduct at issue. See United States v.

---

[4] Defendants have not established why "knowledge" is at issue in the instant retaliation claim. Henderson is not disputing defendants' knowledge of his prison drug use; rather, he is contending that the at-issue misconduct was fabricated and issued because of his protected First Amendment conduct.

13

Green, 617 F.3d 233, 248-49 (3d Cir. 2010). McKeown and Owen may utilize this alleged admission as part of their defense without needing to satisfy Rule 404(b)'s demanding requirements. However, defendants' contention that the February 21, 2018 urine test and misconduct are also intrinsic evidence is incorrect. Those other acts are not "part and parcel of the charged offense," id. at 245, nor do they "directly prove" the charged misconduct, id. at 248.

Defendants' theory of defense is that, on February 22, Henderson admitted to Owen that he had smuggled drugs into the prison as part of an attempted deal to provide information on the prison drug trade in exchange for avoiding disciplinary sanctions from the February 21 misconduct. (See Doc. 95 at 8 n.5). Because it is possible that defendants could set forth a chain of inferences showing why reference to the February 21 urine test and misconduct is relevant for a nonpropensity purpose, use of this specific Rule 404(b) evidence will be denied without prejudice to defendants' right to properly reassert their motion at trial.

### D. Expert Testimony by Henderson

The malpractice defendants (except Dr. Prince) move to exclude any expert testimony by Henderson for the professional negligence claims. Henderson has not opposed this motion. Moreover, Henderson filed certificates of merit under Pennsylvania Rule of Civil Procedure 1042.3(a)(3), indicating that "expert testimony of an appropriate licensed professional is unnecessary for the prosecution of the claim." PA. R. CIV. P. 1042.3(a)(3). And, under the official Note to Rule 1042.3(a)(3), if the plaintiff in a malpractice action certifies that "an expert is unnecessary for prosecution of the claim," absent "exceptional circumstances," he is "bound by the

14

certification and, subsequently, the trial court shall preclude the plaintiff from presenting testimony by an expert on the questions of standard of care and causation." PA. R. CIV. P. 1042.3(a)(3), Note; see <u>Liggon-Redding v. Estate of Sugarman</u>, 659 F.3d 258, 265 (3d Cir. 2011). As Henderson has not established any "exceptional circumstances" or opposed the instant motion *in limine*, defendants' motion to preclude expert testimony at trial by Henderson will be granted.

### E.     Doctrine of *Res Ipsa Loquitur*

Defendants Martin, Amin, and Dr. Johnson move *in limine* to preclude Henderson from pursuing a theory of *res ipsa loquitur* at trial and, after preempting use of that doctrine, to "dismiss" the medical malpractice claims against them. We will deny this motion.

Defendants contend that, because Henderson is not offering expert evidence, "it is apparent" that he "is proceeding solely upon the theory of *res ipsa loquitur* with regard to the medical negligence claims" in this case. (Doc. 99 at 4). They argue that, because Henderson cannot satisfy the requirements for this doctrine, his malpractice claims must be dismissed with prejudice. (<u>Id.</u> at 5).

The problem with defendants' argument is that their description of Henderson's malpractice claims inaccurately constricts his allegations. Defendants contend that a layperson cannot determine whether the arch bars remained implanted too long or the "specific nature of [Henderson's] jaw injury" or the "need for surgical intervention." (<u>Id.</u> at 7-8). But the gravamen of Henderson's malpractice claims is that the medical providers delayed obviously necessary treatment by several months despite Henderson developing severe pain and

15

complications and alerting providers about his pressing need for treatment. (See Doc. 1 at 24-27, 30). As we explained in our November 24 decision, it is possible for a layperson to determine that failing to provide any medical care to Henderson (under the conditions alleged) for several months could breach the requisite standard of care and cause injury. (See Doc. 77 at 18 (citing Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 579-80 (3d Cir. 2003)). Consequently, defendants' motion to preclude Henderson's use of *res ipsa loquitur* at trial—or, in plain terms, assert that no expert testimony is necessary to establish malpractice—will be denied.

### III. Conclusion

The court will grant in part and deny in part defendants' motions *in limine*, as specified above. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Judge
United States District Court
Middle District of Pennsylvania

Dated:   November 8, 2022